**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**

| | | |
|---|---|---|
| JAMES BENJAMIN IRBY, | ) | |
| | ) | |
| Petitioner, | ) | No. 5:21-cv-912-DCN-KDW |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| WARDEN OF EVANS CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the court on Magistrate Judge Kaymani D. West's report and recommendation ("R&R"), ECF No. 58, that the court grant defendant Warden of Evans Correctional Institution's ("Warden") amended motion for summary judgment, ECF No. 47. For the reasons set forth below, the court adopts the R&R and grants the motion.

## I.  BACKGROUND

The R&R ably recites the facts of the case, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

Petitioner James Benjamin Irby ("Irby") is an inmate in the custody of the South Carolina Department of Corrections and was, at all relevant times, housed at the Evans Correctional Institution ("ECI") in Orangeburg, South Carolina. Irby was indicted in 2008 for criminal sexual conduct with a minor in the second degree. ECF No. 46 at 2. On November 18, 2012, Irby proceeded to trial, represented by Christopher Brough ("Counsel"), before the Honorable J. Derham Cole. Id. The jury returned a guilty verdict

1

at the conclusion of trial.  Id.  Irby was sentenced to eighteen years imprisonment.  Id.
Irby appealed his conviction and sentence to the South Carolina Court of Appeals ("Court
of Appeals").  Id.  Irby's primary grounds for the appeal contested whether the court
erred by ruling Irby's confession was admissible.  Id.  The Court of Appeals issued a
decision on January 14, 2015, affirming Irby's conviction and sentence.  The remittitur
was issued on March 3, 2015.  Id. at 2–3.

Irby filed two pro se applications for post-conviction relief ("PCR") in which he
asserted he was being held in custody unlawfully because of ineffective assistance of trial
and appellate counsel and prosecutorial misconduct in March 2015.  Id. at 3.  On January
4, 2016, the court issued an order merging the two PCR Applications into one action.  Id.
Irby amended his PCR application on October 30, 2017.  Id. at 4.  After a PCR motion
hearing on November 16–17, 2017, the PCR court denied and dismissed Irby's PCR
Application on June 4, 2018.  ECF No. 46 at 6.  Irby appealed the denial of his PCR
application.  ECF No. 46–6.  Irby filed a petition for writ of certiorari in the South
Carolina Supreme Court on January 17, 2019.  ECF No. 46–7.  Irby presented the
following issue on appeal:

> Whether the PCR court erred in concluding that defense counsel was not
> ineffective for failing to utilize the services of a false confession expert,
> with whom defense counsel had consulted, at trial?

Id. at 3.  The South Carolina Supreme Court transferred Irby's appeal to the Court of
Appeals and on October 14, 2020, the Court of Appeals denied the petition for writ of
certiorari.  ECF No. 46–9.  The remittitur was issued on November 5, 2020.  ECF No.
46–10.

Irby filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on
March 30, 2021.  ECF No. 1.  Warden moved for summary judgment on June 28, 2021,

2

ECF No. 29, but later withdrew the motion for summary judgment on July 20, 2021, ECF

No. 36, after counsel Elizabeth Franklin-Best appeared on Irby's behalf to file an

unopposed motion for extension of time within which to file an Amended Petition. ECF

No. 35. Irby amended the petition for writ of habeas corpus on August 26, 2021. ECF

No. 43, Amend. Pet. Warden filed an amended motion for summary judgment on

October 15, 2021. ECF No. 47. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and

Local Civil Rule 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were

referred to Magistrate Judge West. Magistrate Judge West filed the R&R, recommending

the court grant Warden's motion for summary judgment on August 9, 2022. ECF No. 58.

Irby filed objections to the R&R on September 8, 2022. ECF No. 62. Warden neither

responded to Irby's objections, nor did Warden file objections to the R&R, and the time

to do so has now expired. As such, the matter is now ripe for the court's review.

## II.  STANDARD

### A.  Order on R&R

This court is charged with conducting a de novo review of any portion of the

Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C.

§ 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of

the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The

recommendation of the Magistrate Judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court. Mathews v. Weber, 423

U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part,

the findings or recommendations made by the magistrate judge . . . or recommit the

matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is

charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id. However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

## B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the

4

evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

## C. Habeas Standard of Review

This court has jurisdiction under 28 U.S.C. § 2254 to hear a petition for a writ of habeas corpus made by a person imprisoned pursuant to a state court proceeding. A petitioner must exhaust all available state court remedies to properly assert his claims in federal court. 28 U.S.C. § 2254(b)(1)(A). Absent cause and prejudice or a fundamental miscarriage of justice, "a federal habeas court may not review unexhausted claims that would be treated as procedurally barred by state courts." Longworth v. Ozmint, 377 F.3d 437, 447–48 (4th Cir. 2004). To sufficiently exhaust available state court remedies, the petitioner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" and "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Id. at 448 (citation and internal quotation marks omitted). In other words, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition." Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir. 2001) (en banc).

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, the court may only grant relief if the state court's decision was "contrary to, or involved an unreasonable application of,

5

clearly established Federal law, as determined by the Supreme Court," or "was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). Moreover, a state court's decision involves an unreasonable application of clearly established federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a particular] case." Id. "If the state courts adjudicate the prisoner's federal claim 'on the merits,' § 2254(d), then AEDPA mandates deferential, rather than de novo, review." Kernan v. Hinojosa, 578 U.S. 412, 413 (2016) (per curiam).

Under AEDPA, a federal court affords deference to a state court's resolution of a state prisoner's habeas claims. See Bell v. Cone, 543 U.S. 447, 455 (2005). Under AEDPA, "state-court decisions are measured against [the Supreme Court's] precedents as of the time the state court renders its decision and cannot be held unreasonable only in light of later decided cases." Brown v. Davenport, 142 S. Ct. 1510, 1525 (2022) (internal quotations omitted). To obtain a writ of habeas corpus from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

Harrington v. Richter, 562 U.S. 86, 103 (2011).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  Id. at 102.

## III.  DISCUSSION

Irby raises three grounds for relief in his amended petition: (1) the South Carolina courts unreasonably failed to grant Irby relief when Irby's involuntary confession was incorrected admitted into evidence; (2) the South Carolina courts unreasonably failed to grant Irby relief for ineffective counsel due to his lawyer's failure to utilize Dr. Richard Leo ("Dr. Leo"), an expert in the area of false confessions, in trial preparation and at the suppression hearing and trial stages; and (3) Irby asserts he is innocent of the charges he has been convicted and sentenced for and he asks the court to grant relief.  Amend. Pet. at 20, 23, 29.  Warden moved for summary judgment based on Irby's failure to state facts sufficient to meet the petitioner's evidentiary burden to grant habeas relief on those legal claims.  ECF No. 47.  The Magistrate Judge recommended that the motion for summary judgment be granted on all three counts.  R&R at 26.  Irby objects to the Magistrate Judge's recommendation with regard to the first and second grounds, but does not contest the Magistrate Judge's recommendation on the third ground.  ECF No. 62.  The court agrees that this petition should be dismissed for no genuine dispute as to any material fact.

### A.  Ground One: Involuntary Confession Claim

Irby contends his confession was not made freely or voluntarily, arguing he only confessed after Detective Morgan ("Morgan"), who was "a large man," spent hours with Irby in a small space advising Irby he would be "thrown to the wolves" and/or receive the maximum possible sentence of up to sixty years if he did not confess.  Amend. Pet. at 22.

7

Irby argues that the trial court erred in admitting his confession since it was involuntary, and that the Court of Appeals ruling affirming this decision was unreasonable. Id. at 21–22.

In accordance with United States Supreme Court precedent, the state trial court in this case held a hearing to determine the voluntariness of Irby's inculpatory statements. See Jackson v. Denno, 378 U.S. 368 (1964) (establishing a court proceeding used to determine whether a defendant's confession was voluntary or involuntary; typically, the court also determines if the confession can be admissible as evidence). During the hearing, the State introduced a video of the polygraph examination and a video of the interview between Morgan and Irby. ECF No. 46-5 at 90. Prior to that interview, Morgan advised Irby of his Miranda rights and secured a waiver of rights on a pre-interrogation form. ECF No. 46 at 24. At no point during the interrogation did Irby ask for counsel or for the interrogation to stop, nor did he give any indication that the discussion was involuntary. Id. Morgan testified that he never threatened, coerced, or promised Irby anything in exchange for his statement—rather, Morgan told Irby he did not have the power to make deals. Id. at 25. Throughout the interrogation, the officers offered Irby breaks and brought him lunch and water. See id. at 25–30. Moreover, Irby either denied his involvement with the victims or accused the victim of making sexual advances to him, rather than confessing to any of the accusations. Id. at 32. After the Denno hearing, Judge Cole found that Irby's statements were voluntarily given and denied Irby's Motion to Suppress. Id. at 32–33. Irby filed a timely notice of appeal and

the Court of Appeals upheld Judge Cole's denial of the Motion to Suppress.  ECF No.

46–1 at 403–04; State v. Irby, Op. No. 2015-UP-021 (S.C. Ct. App. Jan. 14, 2015).

Warden argued that the record fully supported the state court's finding that Irby's

statements were freely and voluntarily given, an interpretation that did not involve an

unreasonable application of Supreme Court precedent.  See ECF No. 46 at 21–37.  In

response, Irby argues the confession was clearly coerced in response to Morgan's threats

and should have been suppressed.  ECF No. 52 at 2–6.  Irby cites to Ninth and Sixth

Circuit case law where the courts found the defendant's confession was coerced to

support his argument.  Id. at 5.  In response, Warden cites to Supreme Court and Fourth

Circuit case law and argues that Irby failed to show the state court's failure to grant his

motion to suppress was contrary to or an unreasonable application of Supreme Court

precedent.  ECF No. 53 at 1–4.  Further, Warden argues that Irby failed to show the

decision rejecting his claim was an unreasonable determination of the facts given the

evidence before the court.  Id.  The Magistrate Judge recommended that the court find

that Irby is not entitled to federal habeas relief based upon this allegation because the

PCR court's determination was not contrary to, or an unreasonable application of,

Supreme Court precedent.  R&R at 16.  Irby objects to the Magistrate Judge's

recommendation, arguing that evidence in the record shows Irby's confession was

involuntary, and therefore the state court adjudication of the claim was unreasonable.

ECF No. 62 at 2–3.

The Supreme Court has held that the voluntariness of a confession is not an issue

of fact entitled to the § 2254(d) presumption, but is a legal question meriting independent

consideration in a federal habeas corpus proceeding.  Miller v. Fenton, 474 U.S. 104, 112

(1985).  But, the subsidiary factual findings of the state court are entitled to a presumption of correctness.  Id.; see also 28 U.S.C. § 2254(e)(1) (finding the determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence).  While Miller predated the enactment of AEDPA, courts have incorporated Miller's independent determination requirement into AEDPA's deferential standard of review.  See Williams v. Taylor, 529 U.S. 362, 402–04, 412–13 (2000); Land v. Allen, 573 F.3d 1211, 1217 (11th Cir. 2009); Moss v. Ballard, 537 F. App'x 191, 196 (4th Cir. 2013).  On a petition for a writ of habeas corpus, the petitioner bears the burden of establishing by a preponderance of the evidence that the confession was involuntary.  Miller v. Fenton, 796 F.2d 598, 604 (3d Cir. 1986) (on remand from 474 U.S. 104), cert. denied, 479 U.S. 989 (1986).

Moreover, the voluntariness of a confession must be determined from the totality of the circumstances.  Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).  The inquiry examines "whether a defendant's will was overborne" by the circumstances surrounding the confession.  Dickerson v. United States, 530 U.S. 428, 434 (2000) (quoting Schneckloth, 412 U.S. at 226).  The courts must consider "the characteristics of the defendant, the setting of the interview, and the details of the interrogation."  United States v. Pelton, 835 F.3d 1067, 1071 (4th Cir. 1987).  Factors that weigh in favor of finding a confession voluntary include, but are not limited to: the defendant voluntarily agreeing to talk with law enforcement officers, the interrogation occurring at a non-custodial setting, telling the defendant they may leave at any time, no restraints on the defendant's freedom of movement, the interview taking place with others present, and the interview lasting only a short time.  See Rose v. Lee, 252 F.3d 676, 686 (4th Cir. 2001);

United States v. Braxton, 112 F.3d 777, 781 (4th Cir. 1997) (en banc).  In contrast, factors that weigh in favor of finding a confession involuntary include: harming or threatening to harm the defendant if he refuses to answer their questions, depriving the defendant of food, sleep, or contact with family, subjecting the defendant to a lengthy period of interrogation or isolation, or using blatant deception to coerce a confession.  See id. at 784–85 (citing cases providing examples of the aforementioned).

But, "government agents may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary." United States v. Mashburn, 406 F.3d 303, 310 (4th Cir. 2005) (quoting United States v. Shears, 762 F.2d 397, 401 (4th Cir. 1985)).  In fact, officers may use a wide range of tactics to elicit a confession without rendering that confession involuntary.  See, e.g., Pelton, 835 F.3d at 1073 ("General encouragement to cooperate is far different from specific promises of leniency."); Braxton, 112 F.3d at 780 ("The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary."); compare with Arizona v. Fulminante, 499 U.S. 279, 388 (1991) (holding that a confession was unconstitutionally coerced in part because the interrogating officer inappropriately promised to protect the suspect from physical violence from other inmates in exchange for his confession).  Moreover, "[a]dmonishing a suspect to tell the truth during an investigatory interview" by advising him of potential consequences of failing to tell the

truth "does not constitute coercive police conduct rendering a statement involuntary."
Braxton, 112 F.3d at 782.

Here, the alleged coercive police actions included Morgan's statements to Irby
that he could be "thrown to the wolves" if he continued to maintain his innocence and
telling Irby of another defendant who allegedly received the maximum sentence because
he only belatedly admitted his guilt. ECF No. 62 at 2. Irby further alleges he was in leg
irons and that he was at the police station for so long that he lost track of time. Id. at 2–3.
But, the record shows that the totality of the circumstances support the trial court's
finding that Irby's statements were made voluntarily. Prior to the interview, Irby was
read his Miranda rights and he signed a form acknowledging as much. ECF No. 46 at 24.
The interview lasted six to seven hours during which time Irby was given breaks, brought
water, and provided lunch. See id. at 25–30. At the conclusion of the interview, Irby
reviewed and verified the accuracy of his statements. Id. at 25. While there are some
factors that support a finding of involuntary confessions (e.g., Morgan's statements, the
use of leg irons), most of the factual findings instead support the conclusion that Irby's
statements were entirely voluntary (e.g., Irby's voluntary waiver of his Miranda rights,
Morgan's disclaimers, Irby's ability to confirm the veracity of the written statements, and
Morgan's provision of breaks to Irby). See Braxton, 112 F.3d at 781, 785–86.

Moreover, the allegations of Morgan's threats to prosecute or impose a long
sentence do not rise to the level where courts would find that they render a statement
involuntary; instead they align with statements courts have found permissive in
conducting a police interrogation. See, e.g., Pelton, 835 F.2d at 1072–73 (finding that the
officers' explanation to the defendant of future investigation and prosecution risks were

not coercive); Braxton, 112 F.3d at 783 (finding that an officer's admonishment to a suspect to tell the truth or face consequences was neither a threat nor an implied promise of non-prosecution); United States v. Holmes, 670 F.3d 586, 592–93 (4th Cir. 2012) (finding an officer's suggestion to make a statement rather than endure the pain of testifying or going through a trial was not coercive). As the Fourth Circuit has repeatedly noted, "[s]ubsequent testimony by an accused about his prior subjective mental impressions and reactions must be carefully scrutinized as such testimony is always influenced by his self-interest." Braxton, 112 F.3d at 781; United States v. Wertz, 625 F.2d 1128, 1136 (4th Cir. 1980) (same); U.S. v. Seidman, 156 F.3d 542, 550 (4th Cir. 1998) (same); Johnson v. Harkleroad, 104 F. App'x 858, 866 (4th Cir. 2004) (same). Irby bears the burden of proving that his statements were made involuntarily by the preponderance of the evidence. See Miller, 796 F.3d at 604. He has not met that burden.

Therefore, the court adopts the R&R's finding that Irby has failed to present sufficient evidence to show that the state court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established law. See R&R at 16.

### B. Ground Two: Ineffective Counsel

Irby contends his trial counsel rendered ineffective assistance when he failed to utilize Dr. Leo, an expert in false confessions, in trial preparation, at the suppression hearing, or at trial. Amend. Pet. at 23–29. Counsel testified at the PCR hearing that he retained the services of Dr. Leo to consult as a false confession expert. ECF No. 46–2 at 9. Dr. Leo informed Counsel that he could not tell if Irby's statements were true or false, but his review of the evidence led him to believe some of the elements of a false confession were present. Id. But, Counsel also testified that based on his later

13

conversations with Irby (i.e., Irby's refusal to pay any fee, Irby's later statements reiterating his failure to stop the victim's sexual actions that undermined the false confession allegations), he determined that it would not make sense to have Dr. Leo testify. Id. at 99. Dr. Leo also testified at the PCR hearing, where he indicated his willingness to be flexible with the fee, as well as described what he would have testified about at the original trial—namely, his opinion that Morgan used interrogation techniques that are known to increase the risks of eliciting false or unreliable admissions. Id. at 187–88, 193. Given the above, the PCR court found that Counsel "was not deficient for not calling Dr. Leo to testify, but [found] [Counsel's] performance by consulting with [Irby] was reasonable—and more than what is required by prevailing professional norms." ECF No. 46–5 at 99.

The Sixth Amendment provides not only the right to counsel, but the right to the effective assistance of competent counsel. Hoffman v. Leeke, 903 F.2d 280, 285 (4th Cir. 1990) (citing Powell v. Alabama, 287 U.S. 45, 48 (1932)). Where a prisoner's habeas petition alleges ineffective assistance of counsel, the district court must review the petition in accordance with both AEDPA and "through the additional lens of Strickland [v. Washington] and its progeny." Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012). Under Strickland, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that this

deficiency prejudiced the defense.  466 U.S. 668, 687, 694 (1984).  Under AEDPA, a writ

of habeas corpus may only be granted when the underlying state court proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Richter, 562 U.S. at 98; Richardson, 668 F.3d at 138.

Because AEDPA and Strickland provide dual, overlapping standards for review

of a state prisoner's habeas petition, the federal court must be doubly deferential to the

state court decisions.  Richardson, 668 F.3d at 139 (citing Richter, 562 U.S. at 105).  The

court must determine "not whether counsel's actions were reasonable," but "whether

there is any reasonable argument that counsel satisfied Strickland's deferential standard."

Richter, 562 U.S. at 105; see also Cullen v. Pinholster, 563 U.S. 170, 202 (2011).  The

court must be mindful that "an unreasonable application of federal law is different from

an incorrect application of federal law."  Richter, 562 U.S. at 100 (quoting Williams v.

Taylor, 529 U.S. 362, 410 (2000)).  Under the doubly deferential standard described in

Richter and Richardson, "a state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision."  Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado,

541 U.S. 652, 664 (2004)); Shinn v. Kayer, 141 S. Ct. 517, 526 (2020) (same).

Therefore, when an ineffective assistance of counsel claim is raised in a § 2254

habeas petition and was denied on the merits by a state court, "[t]he pivotal question is

whether the state court's application of the Strickland standard was unreasonable," not

"whether defense counsel's performance fell below Strickland's standard."  Richter, 562

U.S. at 101. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Id.

The Magistrate Judge recommended the court find Irby's arguments insufficient to satisfy the Strickland test and the court is inclined to agree. R&R at 25. Irby has not demonstrated that Counsel was deficient when he did not use Dr. Leo in trial preparation, at the suppression hearing, or at trial. Furthermore, the court finds that the PCR court's determination on this count was supported by the evidence presented at the hearing, including the testimony of Counsel, Dr. Leo, and Irby. Irby has failed to show by clear and convincing evidence that the PCR court reached an unreasonable factual determination. Instead, the record supports the court's finding that Counsel chose not to use Dr. Leo further due to Irby's inability to pay the quoted fee, Counsel's belief that Dr. Leo's testimony would not sway the court's decision about the admissibility of the confession, and Irby's later reiteration of the statements made during interrogation, outside of interrogation. Courts must be wary of second-guessing counsel's trial tactics, and where counsel's strategy represents a reasonable choice based upon counsel's professional judgment, such conduct is not ineffective assistance of counsel if objectively reasonable under the circumstances. Strickland, 466 U.S. at 689–90. The PCR court's rejection of Irby's claim was not contrary to and did not involve an unreasonable application of federal law. See § 2254(d)(1). For the above reasons, the court adopts the

Magistrate Judge's report and recommendation and grants Warden's motion for summary judgment on Irby's claim under Ground Two.

### C.  Ground Three: Factual Innocence

Irby contends that he is factually innocent of the criminal sexual conduct with a minor in the second degree conviction, resting his conclusion of his actual innocence on the inconsistencies in the purported victim's accounts of the events.  Amend. Pet. at 29. The R&R concluded that the Supreme Court has not recognized a free-standing claim of actual innocence and therefore this claim was not grounds for habeas relief.  R&R at 25–26.  Irby's only response to this conclusion was that he "appreciates this Court's inability to consider evidence outside the extant state court record in adjudicating this claim." ECF No. 62 at 4.  When neither party timely files specific objections to the R&R, the R&R is reviewed only for clear error.  Diamond, 416 F.3d at 315.  A de novo review of the record indicates that the R&R accurately summarizes this case and the applicable law. Accordingly, the court adopts the Magistrate Judge's report and recommendation as to the third count, and grants the Warden's motion for summary judgment granted as to the claim of factual innocence.

### IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R and **GRANTS** the Warden's motion for summary judgment.

**AND IT IS SO ORDERED.**

17